**Andrew M. MAURO, Plaintiff,**

v.

**Michele FREELAND, et al., Defendants.**

**Civil Action No. H–09–0746.**

United States District Court,
S.D. Texas,
Houston Division.

Sept. 21, 2009.

Andrew M. Mauro, Beaumont, TX, pro se.

Erika M. Kane, Office of the Texas Atty. General, Austin, Charmaine Michele Aarons Holder, Office of the U.S. Attorney, Julie N. Searle, U.S. Attorneys Office, Houston, for Michele Freeland, Shelly J. Hicks, Tim Johnson, Unknown Federal Officials/Investigators for Southern District of Texas, Houston Division, Defendants.

## MEMORANDUM OPINION AND ORDER

SIM LAKE, District Judge.

Anthony Mauro is a federal prisoner incarcerated at the Bureau of Prisons' FCI–Beaumont–Low facility in Beaumont, Texas. He is serving a 135–month sentence imposed after he pleaded guilty to conspiracy to possess drugs with the intent to distribute and conspiracy to launder money. He filed this action against the defendants asserting causes of action for violations of his constitutional rights and civil conspiracy arising out of the alleged refusal by the defendants to provide Mauro with chain-of-custody records and documentation of laboratory test results related to drugs seized from him on October 23, 1997.

Pending before the court are defendant Michele Freeland's Motion to Dismiss (Docket Entry No. 11), Defendants Tim Johnson and Shelley Hicks' Motion to Dismiss or in the Alternative Motion for Summary Judgment and Memorandum in Support (Docket Entry No. 15), Defendants Tim Johnson and Shelley Hicks' Supplemental Motion to Dismiss and Memorandum in Support (Docket Entry No. 20), and Mauro's Motion for Enlargement of Time (Docket Entry No. 25). In response to the defendants' motions to dismiss, Mauro has filed Plaintiff's Opposition to Defendant Michele Freeland's Motion to Dismiss (Docket Entry No. 14), and Plaintiff's Opposition to United States Defendants Tim Johnson and Shelley Hicks' Motion to Dismiss or in the Alternative Motion for Summary Judgment (Docket Entry No. 17). Freeland has also filed Defendant Michele Freeland's Reply to Plaintiff's Response to Freeland's Motion to Dismiss (Docket Entry No. 16).

For the reasons stated below, the court will deny Mauro's motion for enlargement of time and will grant the defendants' motions to dismiss. To the extent that Mauro asserts any claims against unidentified defendants, the court will dismiss those claims *sua sponte*.

### I. *Background*

Mauro was arrested on October 23, 1997, when he attempted to sell 1,048 tablets purported to be 3,4 methylenedioxymethamphetamine, commonly known as MDMA or ecstacy, to undercover Louisiana police officers.[1] Mauro asserts that the tablets were tested in a state laborato-

1. Complaint, Docket Entry No. 1, ¶ 8.

ry and that no controlled substances were detected.[2] He asserts that a state grand jury indicted him for delivery of a simulated controlled substance.[3] Mauro alleges that he pleaded guilty to that count and received a three-month sentence in state prison, followed by five years of probation.[4]

Mauro contends that sometime later federal agents re-tested the tablets that were seized from him in October of 1997.[5] This testing indicated that the tablets contained methamphetamine.[6] In 2002, Mauro pleaded guilty in federal court pursuant to a plea agreement to one count of conspiracy to possess 3,4 methylenedioxy-methamphetamine; methamphetamine; lysergic acid diethylamide ("LSD"); and anabolic steroids, as well as one count of conspiracy to commit money laundering.[7] In his plea agreement with the government Mauro waived his right to appeal his sentence or to collaterally contest his conviction or sentence in a post-conviction proceeding.[8] United States District Judge Lee Rosenthal sentenced Mauro to 135 months in prison for the two counts to which he pleaded guilty.[9] Mauro is currently serv-ing this sentence at the federal Bureau of Prison's FCI–Beaumont–Low facility in Beaumont, Texas.[10]

Despite waiving his right to collaterally attack his sentence, Mauro filed a motion under 28 U.S.C. § 2255 attacking his conviction and sentence on May 2, 2005.[11] Judge Rosenthal denied Mauro's § 2255 motion and dismissed the corresponding civil action with prejudice on January 17, 2006.[12]

On April 29, 2008, Mauro filed a motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2).[13] Judge Rosenthal denied this motion on May 13, 2008.[14]

Mauro, proceeding *pro se* and *in forma pauperis*,[15] initiated the instant civil action on March 12, 2009.[16] Mauro has sued Michele Freeland, a legal assistant for the Office of General Counsel of the Texas Department of Public Safety, in her individual capacity,[17] Shelley Hicks, a former Assistant United States Attorney for the Southern District of Texas who was part of the team that prosecuted Mauro, in her individual and official capacities,[18] and Tim Johnson, the current Acting United States

2. *Id.*

3. *Id.*

4. *Id.*

5. *Id.* ¶ 9.

6. *Id.*

7. *United States v. Mauro*, No. H–02–546–01, slip. op. at 2 (S.D.Tex. Jan. 17, 2006) (Rosenthal, J.); *United States v. Mauro*, No. H–02–546–01, 2008 WL 2050732, slip. op. at 1 (S.D.Tex. May 13, 2008) (Rosenthal, J.).

8. *United States v. Mauro*, No. H–02–546–01, slip. op. at 2 (S.D.Tex. Jan. 17, 2006).

9. Complaint, Docket Entry No. 1, ¶ 9; *United States v. Mauro*, No. H–02–546–01, slip. op. at 1 (S.D.Tex. Jan. 17, 2006).

10. Complaint, Docket Entry No. 1, ¶ 3.

11. *United States v. Mauro*, No. H–02–546–01, slip. op. at 1–3 (S.D.Tex. Jan. 17, 2006).

12. *Id.* at 7.

13. *See United States v. Mauro*, No. H–02–546–01, 2008 WL 2050732, slip. op. at 1 (S.D.Tex. May 18, 2008).

14. *Id.* at 2.

15. *See* Order, Docket Entry No. 4 (granting Mauro's motion to proceed *in forma pauperis* ).

16. Complaint, Docket Entry No. 1.

17. *Id.* ¶ 4.

18. *Id.* ¶ 5.

Attorney for the Southern District of Texas, in his official capacity.[19] Mauro states that he plans to amend his complaint to add additional defendants in their individual and/or official capacities once discovery is conducted.[20]

Mauro alleges that he has attempted to obtain chain-of-custody records and laboratory reports related to the re-testing of the tablets that were seized from him in October of 1997.[21] He asserts that he was informed on October 1, 2008, and again on October 29, 2008, that the records do not exist.[22] Mauro alleges that defendant Freeland had personal access and control over the chain-of-custody and lab testing records.[23] Mauro alleges that defendant Hicks oversaw the federal investigation that led to Mauro's federal prosecution and that she "was responsible for the chain-of-custody and retesting of the 1,048 [t]ablets seized on Oct[ober] 23, 1997, from [Mauro] ...."[24] Mauro contends that defendant Johnson "has custody and control of" the United States Attorney's office and its employees and is responsible for its day-to-day operations.[25]

Mauro asserts five causes of action based on the denial of his requests for the chain-of-custody and laboratory testing records. First, Mauro alleges that the defendants have violated his First Amendment right of access to the courts.[26] Second, he asserts that the defendants violated his Fifth Amendment right of access to the courts, thereby preventing him from "presenting his allegations concerning violations of his Fundamental Constitutional rights."[27] Mauro next asserts that defendant Johnson violated his Fifth Amendment rights by failing to train and supervise his subordinates to ensure that they complied with the First Amendment and Due Process Clause.[28] Fourth, Mauro alleges that the defendants have violated his Eighth Amendment right to be free from cruel and unusual punishment.[29] Fifth, Mauro asserts that "the acts complained of herein[ ] were committed by defendant[ ]s and their agents, individually, and in concert with a knowing and reckless disregard of plaintiff's Constitutional and statutory rights and without reasonable belief that such acts were legal."[30] The court construes this a claim of conspiracy under § 1983. *See Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir.1994) (explaining that a person, including a non-state actor, can be held liable under 42 U.S.C. § 1983 if he or she is a willful participant in a conspiracy with a state actor to violate the plaintiff's constitutional rights and the plaintiff is actually deprived of a constitutional right).

Mauro seeks a declaratory judgment under 28 U.S.C. § 2201 that defendants have violated his First, Fifth, and Eight Amendment rights.[31] He also seeks an injunction compelling the defendants to turn over the

19. *Id.* ¶ 6.

20. *Id.* ¶ 7.

21. *Id.* ¶ 10. Mauro does not specify how he requested the records or to whom he addressed his record request.

22. *Id.* Mauro does not specify who informed him that the records do not exist.

23. *Id.* ¶ 4.

24. *Id.* ¶ 5.

25. *Id.* ¶ 6.

26. *Id.* ¶ 14.

27. *Id.* ¶ 15.

28. *Id.* ¶ 16.

29. *Id.* ¶ 17.

30. *Id.* ¶¶ 18–19.

31. *Id.,* Prayer for Relief, ¶ 1.

chain-of-custody and laboratory testing records for the tablets seized from him in October of 1997.[32] Mauro seeks a second injunction ordering defendant Johnson and his successors, agents, and employees to "train, supervise, and promulgate adequate procedures and policies requiring their subordinates to comply with the Fifth Amendment Due Process Clause ...."[33] Mauro also seeks $4,000,000 in compensatory damages and $2,000,000 in punitive damages, as well as costs, expenses, and attorney's fees.[34]

 Mauro's complaint states that he brings this action under 42 U.S.C. § 1983.[35] Because 42 U.S.C. § 1983 only provides a cause of action against *state* actors for violations of federal Constitutional rights, it is an adequate vehicle only for the constitutional claims against defendant Freeland and the single conspiracy claim against all defendants. *See Cinel,* 15 F.3d at 1343. The court therefore assumes that Mauro's stand-alone constitu-

tional claims against defendants Hicks and Johnson, who are or were federal employees, are asserted under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *See Evans v. Ball,* 168 F.3d 856, 863 n. 10 (5th Cir.1999) ("A *Bivens* action is analogous to an action under § 1983—the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials."), *overruled on other grounds, Castellano v. Fragozo,* 352 F.3d 939, 948–49 & n. 36 (5th Cir.2003); *Abate v. S. Pac. Transp. Co.,* 993 F.2d 107, 110 n. 14 (5th Cir.1993) (*Bivens* ... "extends the protections afforded by § 1983 to parties injured by federal actors not liable under § 1983.").[36] The defendants have moved the court to dismiss Mauro's complaint for failure to state a claim for which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[37]

**32.** *Id.,* Prayer for Relief, ¶ 2.

**33.** *Id.,* Prayer for Relief, ¶ 3.

**34.** *Id.,* Prayer for Relief, ¶¶ 4, 6–7.

**35.** *Id.,* at Heading, ¶ 2.

**36.** The Supreme Court has recognized *Bivens* causes of action to remedy only a limited number of constitutional violations. *See Correctional Servs. Corp. v. Malesko,* 534 U.S. 61, 122 S.Ct. 515, 519–20, 151 L.Ed.2d 456 (2001) (explaining that the Court has recognized *Bivens* actions to remedy only three types of constitutional violations: (1) Fourth Amendment violations, (2) Fifth Amendment Due Process violations, and (3) Eighth Amendment Cruel and Unusual Punishment violations). The Court has recently "been reluctant to extend *Bivens* liability 'to any new context ....'" *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009) (quoting *Malesko,* 122 S.Ct. at 520). Therefore, it is unclear whether a *Bivens* action exists for all of the constitutional violations asserted by Mauro. Nevertheless, because the defendants have not raised the

issue, the court assumes *arguendo* that *Bivens* causes of action exist for each of the constitutional violations asserted by Mauro. *Cf. Christopher v. Harbury,* 536 U.S. 403, 122 S.Ct. 2179, 2185 n. 6, 153 L.Ed.2d 413 (2002) (noting that the defendant "did not challenge below the existence of a cause of action under *Bivens,*" and therefore "express[ing] no opinion on the matter in deciding this case").

**37.** Defendants Johnson and Hicks have filed an answer. *See* Answer of Tim Johnson, Acting United States Attorney, and Shelley Hicks, Former Assistant United States Attorney, to Plaintiff's Original Complaint, Docket Entry No. 12; First Amended Answer of Tim Johnson, United States Attorney, and Shelley Hicks Former Assistant United States Attorney, to Plaintiff's Original Complaint, Docket Entry No. 22. Therefore, the court must consider their motions to dismiss as motions for judgment on the pleadings pursuant to Rule 12(c). *See Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir.1999) (holding that a Rule 12(b)(6) motion made by a defendant after it has filed a responsive pleading "will be treat-

## II. *Mauro's Motion for Enlargement of Time*

■ Defendants Johnson and Hicks filed their Supplemental Motion to Dismiss and Memorandum in Support on July 30, 2009.[38] Under the local rules of this district, Mauro had twenty days—until August 19, 2009—to respond. *See* S.D. Tex.R. 7.4. On August 17, 2009, Mauro moved to strike the supplemental motion to dismiss, and in the alternative, requested additional time to respond to the supplemental motion to dismiss.[39] On August 25, 2009, the court denied Mauro's motion to strike the supplemental motion to dismiss, but granted his request for additional time to respond, allowing Mauro until September 14, 2009, to file a response.[40] Therefore, Mauro had a total of forty-six days to respond, twenty-six more than typically allowed by the local rules.

Despite the additional time provided by the court, Mauro did not file a response to the supplemental motion to dismiss by September 14, 2009. On September 15, 2009, Mauro filed a Motion for Enlargement of Time, requesting an additional forty-five days to respond.[41] Because Mauro has already had substantial additional time to prepare and file a response and has provided no persuasive reason why more additional time is required, the court will deny his Motion for Enlargement of Time. *See Adams v. Travelers Indem. Co. of Conn.,* 465 F.3d 156, 161 (5th Cir.2006) (explaining that district courts have discretion to deny untimely requests for extensions to respond to dispositive motions).

## III. *Defendants' Motions to Dismiss*

### A. Standard of Review

When evaluating a motion to dismiss for failure to state a claim, the court "must limit [its] inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint ... [and] matters of which [it] may take judicial notice." *Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1017–18 (5th Cir.1996). The court must accept all of the plaintiff's factual allegations as true and view them in the light most favorable to the plaintiff. *In re S. Scrap Material Co., LLC,* 541 F.3d 584, 587 (5th Cir.2008). All reasonable inferences should be drawn in the plaintiff's favor. *Elsensohn v. St. Tammany Parish Sheriff's Office,* 530 F.3d 368, 371–72 (5th Cir.2008).

Viewing the complaint in this manner, the court must ultimately determine whether "'the complaint states any valid claim for relief.'" *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir.2000) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357, at 601 (1st ed.1969)). Mere conclusory allegations, however, are not sufficient. *Id.* "[A] formulaic recitation of the elements of a cause of action will not

---

ed as a motion for judgment on the pleadings based on a failure to state a claim on which relief may be granted"). This procedural point is of little consequence, however, because "[t]he standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Johnson v. Johnson,* 385 F.3d 503, 529 (5th Cir.2004).

**38.** Defendant Tim Johnson and Shelley Hicks' Supplemental Motion to Dismiss and Memorandum in Support, Docket Entry No. 20.

**39.** Plaintiff's Objections and Motion to Strike Defendants' First Amended Answer and Supplemental Motion to Dismiss Due to Failure to Timely Plead, Docket Entry No. 23.

**40.** Order, Docket Entry No. 24.

**41.** Motion for Enlargement of Time, Docket Entry No. 25.

do ...." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). At a minimum the plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level ...." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has" failed to adequately state a claim. *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

### B. Analysis

#### 1. *Sovereign Immunity*

Mauro has sued defendant Johnson in his official capacity only and defendant Hicks in both her official and individual capacities. Johnson and Hicks assert that, to the extent they are sued in their official capacities, Mauro's suit is barred by sovereign immunity.

 Suits against government officers in their official capacities are considered to be suits against the government itself. *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) ("Official-capacity suits ... generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." (Citations and internal quotation marks omitted)). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer,* 510 U.S. 471, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994). *See also Garcia v. United States,* 666 F.2d 960, 966 (5th Cir.1982) ("An individual cannot sue the United States without its consent."). "Sovereign immunity is

jurisdictional in nature." *Meyer,* 114 S.Ct. at 1000. "[A] waiver of the traditional sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976) (quoting *United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969)). "Plaintiff bears the burden of showing Congress' unequivocal waiver of sovereign immunity." *St. Tammany Parish, ex rel. Davis v. FEMA,* 556 F.3d 307, 315 (5th Cir.2009).

 Mauro has not alleged, and the record does not reflect, that the federal government has waived its sovereign immunity to allow a suit such as this. Therefore, to the extent Mauro asserts claims against Johnson, Hicks, and/or any other federal employees in their official capacities, the court has no jurisdiction over these claims. *See Meyer,* 114 S.Ct. at 1000.

 Alternatively, even if the federal government were not protected by sovereign immunity in this case, a *Bivens* action may not be brought against the federal government. *See Meyer,* 114 S.Ct. at 1005–06. *See also Affiliated Home Health Care Agency v. Shalala,* 164 F.3d 282, 286 (5th Cir.1999) ("*Bivens* ... provides a cause of action only against government officers in their individual capacities."). Therefore, to the extent Mauro has sued Johnson, Hicks, and/or any other federal employees in their official capacities under *Bivens,* Mauro has failed to state a claim for which relief can be granted.

#### 2. *Absolute Prosecutorial Immunity*

 Hicks contends that Mauro's claims against her in her individual capacity for damages are barred by the doctrine of absolute prosecutorial immunity. A prosecutor is absolutely immune from a

civil suit for damages arising out of actions taken " 'in initiating a prosecution and in presenting the State's case ....' " *Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 2614, 125 L.Ed.2d 209 (1993) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976)). On the other hand, a prosecutor is not absolutely immune from civil suits for damages arising out of actions taken in conducting the prosecutor's "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings ...." *Id.* at 2615 (citing *Burns v. Reed,* 500 U.S. 478, 111 S.Ct. 1934, 1943–44, 114 L.Ed.2d 547 (1991)). When the prosecutor functions as only an administrator or investigator and is not covered by absolute immunity, "[s]he is entitled only to qualified immunity." *Id.* (citing *Imbler,* 96 S.Ct. at 995 n. 33).

■ To the extent Mauro asserts that Hicks should have turned over the chain-of-custody records and the laboratory test reports to him before trial and that such evidence would have been exculpatory, Hicks is clearly shielded by absolute immunity. *See Cousin v. Small,* 325 F.3d 627, 635 (5th Cir.2003) ("[T]he [pre-trial] suppression of exculpatory evidence is shielded by absolute immunity.") (citing *Henzel v. Gerstein,* 608 F.2d 654, 657 (5th Cir.1979)). The court, however, does not understand Mauro's complaint to assert that Hicks should have turned over the records before his guilty plea, but instead that Hicks wrongfully refused to turn over the records after he requested them in October of 2008, over six years after Mauro pleaded guilty. Nevertheless, the court concludes that Hicks is still shielded by absolute immunity because Mauro's com-

plaint implies that he seeks the records to attack his conviction or sentence in a judicial proceeding.[42] Therefore, the decision of whether to turn over the evidence to Mauro would be related to or involve preparation for judicial proceedings. *See Buckley,* 113 S.Ct. at 2614–15. Even if Hicks were not absolutely immune from Mauro's claims for damages, Mauro's claims against her fail for other reasons, as explained below.

### 3. *Heck Doctrine*

■ Defendants Johnson, Hicks, and Freeland assert that all of Mauro's claims are barred by the Supreme Court's holding in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In *Heck,* the Court held that a prisoner may not bring a claim under § 1983 for damages "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless the defendant can prove that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a ... tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus ...." *Heck,* 114 S.Ct. at 2372. In other words, if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence ... the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* If, however, "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the ab-

---

**42.** This conclusion is supported by Mauro's allegation that by withholding the records that he seeks, the defendants have wrongfully barred his access to the courts. *See* Complaint, Docket Entry No. 1, ¶¶ 14–15.

sence of some other bar to the suit." *Id.* at 2372–73.

The holding in *Heck* was consistent with the Supreme Court's prior holding in *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 1836, 36 L.Ed.2d 439 (1973), that a prisoner cannot use a § 1983 action to challenge "the fact or duration of his confinement." In *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 1589, 137 L.Ed.2d 906 (1997), the Court extended the principle of *Heck* to bar claims for declaratory relief under § 1983 "that necessarily imply the invalidity of the punishment imposed . . . ."

Consistent with these cases, the Fifth Circuit has interpreted *Heck* broadly to bar any cause of action under § 1983, regardless of the type of relief sought, that would imply the invalidity of the plaintiff's conviction or sentence. *See Kutzner v. Montgomery County*, 303 F.3d 339, 340 (5th Cir.2002) (stating that "no cause of action exists under § 1983 that would 'necessarily imply the invalidity of [a plaintiff's] conviction or sentence'" (quoting *Heck*, 114 S.Ct. at 2372)). The Fifth Circuit has extended *Heck* to bar *Bivens* actions that implicate the validity of the plaintiff's conviction or sentence. *See Stephenson v. Reno*, 28 F.3d 26, 27–28 (5th Cir.1994) (concluding that the plaintiff's *Bivens* action was barred by *Heck* because it was "a challenge to the fact or length of his confinement").

In *Kutzner*, the Fifth Circuit concluded that even claims that are intended only "'to set the stage for a future attack on [the prisoner's] confinement'" are precluded under *Heck. Kutzner*, 303 F.3d at 341 (quoting *Harvey v. Horan*, 278 F.3d 370, 378 (4th Cir.2002)). Accordingly, the Court of Appeals held that Kutzner's § 1983 claim seeking an injunction requiring the state "to produce biological evidence for DNA testing" was *Heck*-barred, and was cognizable, if at all, only in a habeas corpus action. *Id.* at 340–341.

It is undisputed that neither Mauro's conviction or sentence has "been reversed on direct appeal, expunged by executive order, declared invalid by a . . . tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ." *Heck*, 114 S.Ct. at 2372. Therefore, the question for the court is whether "a judgment in favor of [Mauro] would necessarily imply the invalidity of his conviction or sentence . . . ." *Id.*

■■■ The defendants assert that Mauro seeks the chain-of-custody and lab testing records in order to challenge his conviction or sentence. In other words, he is setting the stage for a future attack on his confinement. Therefore, they assert that his claims necessarily imply the invalidity of his conviction or sentence and are barred by *Heck* and *Kutzner*.

Mauro asserts in the first paragraph of his complaint that his claims are intended "to obtain redress and compel the defendant[ ]s to [t]urn over the chain-of-custody record[ ]s [and] the re-testing lab reports/analysis sheets." [43] Mauro does not explicitly state that he intends to use these records to challenge his conviction or sentence. However, in response to the defendants' assertions that his claims are barred by *Heck* and *Kutzner*, he does not deny it.[44] Instead, citing *Wilkinson v. Dotson*, 544 U.S. 74, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005), Mauro argues that merely ob-

---

**43.** Complaint, Docket Entry No. 1, ¶ 1.

**44.** *See* Plaintiff's Opposition to Defendant Michele Freeland's Motion to Dismiss, Docket

Entry No. 14, at 11–12. The court cannot envisage any other reason that Mauro would want to obtain the records that he seeks.

taining the records would not necessarily imply that his conviction or sentence is invalid.

In *Dotson*, the Supreme Court considered the claims of two Ohio prisoners brought under § 1983 challenging the constitutionality of the application of new parole guidelines in their parole hearings. *Dotson*, 125 S.Ct. at 1245. Both prisoners sought a declaratory judgment that the application of the new guidelines in their cases was unconstitutional and an injunction ordering that they be given new parole hearings under the old guidelines. *Id.* The Court concluded that the prisoners' suits were not barred under *Heck* and its progeny because the success of their claims "would not necessarily spell speedier release." *Id.* at 1248. Instead, it would only mean that each prisoner would receive a new hearing, through which he might or might not secure an earlier release from prison. *Id.*

Mauro argues that, like the prisoners in *Dotson*, successes on his claims would not necessarily result in his release, "even if he ... seeks to 'facilitate' or 'set the stage' for a future attack on his [conviction]."[45] In other words, he will still have to initiate further litigation based on the records once he receives them before he can obtain relief from his conviction or sentence.

Mauro's argument essentially questions the viability of *Kutzner*, which was decided in 2002, in light of the Supreme Court's holding in *Dotson* in 2005. The Fifth Circuit, however, has continued to apply *Kutzner*, post-*Dotson*, to foreclose claims that seek to obtain evidence that could be used to challenge the plaintiff's conviction or sentence.[46] *See, e.g., Summers v. Eidson*, 206 Fed.Appx. 321, 323 (5th Cir.2006) (holding that a prisoner's § 1983 suit seeking to force the defendants to turn over certain *Brady* evidence that would enable him to initiate a habeas action was barred by *Heck* and *Kutzner*). Until it is overruled, *Kutzner* is the law in this Circuit and this court is bound to apply it.

Because Mauro's claims are intended to " 'set the stage for a future attack on [his] confinement,'" they are cognizable, if at all, only in habeas corpus. *Kutzner*, 303 F.3d at 341. Mauro may not bring them under § 1983 or *Bivens*, as he has attempted to do. *Id.; Stephenson*, 28 F.3d at 27–28. Accordingly, Mauro has failed to state a claim for which relief can be granted.

### 4. *Merits of Each Claim*

Even if Mauro's claims were not barred by sovereign immunity, prosecutorial immunity, or the *Heck* doctrine, he has still failed to state a claim for which relief can be granted. As explained below, he has failed to state sufficient facts that, if true, would establish violations of the constitutional rights asserted.[47]

**45.** Plaintiff's Opposition to Defendant Michele Freeland's Motion to Dismiss, Docket Entry No. 14, at 12.

**46.** Several Courts of Appeals have interpreted *Dotson* to allow § 1983 suits by convicted prisoners intended only to force the production of potentially exculpatory evidence. *See, e.g., McKithen v. Brown*, 481 F.3d 89, 103, & n. 15 (2d Cir.2007); *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir.2006); *Osborne v. District Attorney's Office for the Third Judicial District*, 423 F.3d 1050, 1055–56 (9th Cir.2005). The

Supreme Court recently declined to resolve the "difficult issue" presented by the circuit split. *District Attorney's Office for the Third Judicial District v. Osborne*, —— U.S. ——, 129 S.Ct. 2308, 2319, 174 L.Ed.2d 38 (2009).

**47.** The defendants also assert that they are protected by qualified immunity and that Mauro's claims for damages are barred by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e). The court need not address these defenses in order to conclude that

a. Denial of Access to the Courts

Mauro asserts that the defendants have denied him his First and Fifth Amendment right of access to the courts.[48] The Supreme Court has recognized two categories of denial of access to the courts claims. *See Christopher v. Harbury*, 536 U.S. 403, 122 S.Ct. 2179, 2185, 153 L.Ed.2d 413 (2002). The first category involves claims "that systematic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Id.* The second category involves claims "of specific cases that cannot now be tried (or tried with all material evidence)" because of some official action, "no matter what official action may be in the future." *Id.* at 2186.

The court understands Mauro to assert that, by withholding the chain-of-custody records and lab test results, the defendants are presently preventing him from initiating litigation. Regardless of which category his claim falls into, however. Mauro must show that he has actually "suffered injury by being shut out of court." *Id.* at 2186–87. *Accord Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998) ("[W]ithout proving an actual injury, a prisoner cannot prevail on an access-to-the-courts claim."). To do this, Mauro must show that his underlying claims—the claims he would raise or would have raised if only he had access to the chain-of-custody and lab testing records—are

"nonfrivolous" and are at least "arguable." *Harbury*, 122 S.Ct. at 2187 (quoting *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 2181 & n. 3, 135 L.Ed.2d 606 (1996)). *See also Ruiz*, 160 F.3d at 275 (affirming the district court's rejection of a prisoner's access-to-the-courts claim because his "appeal was ultimately frivolous," and therefore, "no real prejudice resulted").

Mauro fails to clearly specify, in either his complaint or his response briefs, what sort of claims he is unable or was unable to litigate. He asserts only generally that his inability to obtain the sought after records has prevented him from initiating an action and vindicating his rights. Therefore, the court cannot evaluate whether the claims that Mauro would raise or would have raised based on the allegedly withheld chain-of-custody and lab testing records are potentially meritorious. Accordingly, Mauro has failed to adequately allege how he has been injured.

Moreover, Mauro cannot show that his injury stems from being unable to effectively appeal or collaterally attack his sentence because he knowingly and voluntarily waived his right to appeal and collaterally attack his conviction and sentence when he pleaded guilty. *See United States v. Mauro*, No. H–02–546–01, slip. op. at 2 (S.D.Tex. Jan. 17, 2006) ("Mauro's guilty plea included a waiver of his right to appeal his sentence or to contest his conviction or sentence in a postconviction pro-

---

Mauro has failed to state a claim for which relief can be granted.

**48.** Mauro asserts two separate denial of access to the courts claims, one based on the First Amendment and the other based on the Fifth Amendment. *See* Complaint, Docket Entry No. 1, ¶¶ 14–15. The court will consider these as a single claim, however, because the elements of a denial of access to the courts claim do not depend on the textual basis of the right, which the Supreme Court has admitted is "unsettled." *See Christopher v. Har-*

*bury*, 536 U.S. 403, 122 S.Ct. 2179, 2186 & n. 12, 153 L.Ed.2d 413 (2002) (explaining that although the "[d]ecisions of [the Supreme Court] have grounded the right" in various Constitutional clauses—including the Privileges and Immunities Clause of Article IV, the Petition Clause of the First Amendment, the Fifth Amendment's Due Process Clause, and the Equal Protection Clause of the Fourteenth Amendment—the Court has consistently articulated the elements of the claim).

ceeding."). Furthermore, any attempt by Mauro to collaterally attack his sentence at this point would likely be time barred under 28 U.S.C. § 2255(f), and barred as successive under 28 U.S.C. § 2244(a). Because Mauro has failed to explain what non-frivolous claims he is or was prevented from asserting, he has failed to state a viable claim for denial of access to the courts.

### b. Failure to Train and Supervise

Mauro alleges that defendant Johnson violated his constitutional rights by failing to train and supervise his subordinates to comply with the First Amendment and the Due Process Clause. Even if this claim were brought against Johnson in his individual capacity, thereby avoiding the sovereign immunity bar and falling within the scope of *Bivens*, it would not succeed.

The primary problem with Mauro's failure to supervise claim against Johnson is that he has failed to state a claim for a violation of any of his constitutional rights in the first place. Obviously, Johnson himself has not violated Mauro's constitutional rights by failing to adequately train and supervise his subordinates if none of his subordinates violated Mauro's constitutional rights.

Moreover, Mauro has failed to allege facts sufficient to establish another vital element of his failure to supervise claim. For a claim based on the defendant's failure to supervise or train, the plaintiff must show that: " '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights;

and (3) the failure to train or supervise amounts to deliberate indifference.' " *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir.2009) (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998)). To establish deliberate indifference, " 'a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation.' " *Id.* (quoting *Cousin*, 325 F.3d at 637). Furthermore, the plaintiff must specifically allege " 'how a particular training program is defective.' " *Id.* (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir.2005)). Mauro has failed to allege a pattern of violations that would indicate deliberate indifference on Johnson's part, and Mauro has not specifically alleged how any particular training program for which Johnson is responsible is defective. Accordingly, he has failed to state a claim for failure to supervise or train.

### c. Cruel and Unusual Punishment

Mauro also alleges that the defendants have violated his Eighth Amendment right to be free from cruel and unusual punishment. Mauro, however, does not complain about the conditions of his confinement.[49] *See Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir.2002) (explaining that a plaintiff asserting an Eighth Amendment claim based on conditions of confinement must show "conditions so serious as to deprive him of the minimal measure of life's necessities"). Nor does he assert that his term of imprisonment is grossly disproportionate to the crime for which he pleaded guilty and was convict-

---

**49.** In his response to Freeland's motion to dismiss, Mauro explains that he is not asserting an Eighth Amendment claim based on the conditions of his confinement. *See* Plaintiff's Opposition to Defendant Michele Freeland's

Motion to Dismiss, Docket Entry No. 14, at 10–11. Mauro, however, fails to explain how his claim falls within other Eighth Amendment precedent. *Id.*

ed.[50] *See Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637 (1983) (explaining that the cruel and unusual punishment clause of the Eighth Amendment prohibits "sentences that are disproportionate to the crime committed"). Instead, Mauro's theory is that the defendants have "intentionally and wantonly inflict[ed] pain on the plaintiff by intentionally impeding and interfering with his attempts to access legal documents ... under [their] control ...."[51] The court is not aware of any precedent indicating that the withholding of certain records can constitute an Eighth Amendment violation, nor can the court understand how the mere withholding of records could constitute cruel and unusual punishment. Mauro has failed to state a viable Eighth Amendment claim.

### d. Civil Conspiracy

■ Mauro alleges that the defendants have conspired to violate his constitutional rights. To prove such a conspiracy claim, Mauro must establish, *inter alia,* "an actual deprivation of constitutional rights." *Cinel,* 15 F.3d at 1343. Because, as explained above, Mauro has failed to state a valid claim for the violation of any constitutional right, his conspiracy claim necessarily fails.

### IV. *Conclusion and Order*

For the reasons explained above, Mauro's Motion for Enlargement of Time (Docket Entry No. 25) is DENIED. Michele Freeland's Motion to Dismiss (Docket Entry No. 11), Defendants Tim Johnson and Shelley Hicks' Motion to Dismiss or in the Alternative Motion for Summary Judg-

ment and Memorandum in Support (Docked Entry No. 15), and Defendants Tim Johnson and Shelley Hicks' Supplemental Motion to Dismiss and Memorandum in Support (Docket Entry No. 20) are GRANTED. Additionally, to the extent that Mauro's complaint could be construed to assert claims against any unnamed defendants, the court *sua sponte* DISMISSES the claims against them.

■ Although the court has the discretion to allow Mauro to file an amended complaint, *see* Fed.R.Civ.P. 15(a), the court declines to do so. Mauro has not requested leave to amend his complaint. *See United States ex rel. Willard v. Humana Health Plan of Texas,* 336 F.3d 375, 387 (5th Cir.2003) (explaining that a party must expressly request leave to amend, and must "set forth with particularity the grounds for the amendment and the relief sought."). Moreover, the court concludes that any attempted amendment would be futile. *See id.* ("[L]eave to amend properly may be denied when ... amendment would be futile."). Accordingly, the court will enter a Final Judgment dismissing this action with prejudice.

---

**50.** To the extent Mauro's complaint could be interpreted to assert that his sentence is cruel and unusual because it is disproportionate to the crime committed or because he is actually innocent, his claim is clearly barred under *Heck* because a finding in Mauro's favor would "necessarily imply the invalidity of his conviction or sentence ...." *Heck,* 114 S.Ct. at 2372.

**51.** Plaintiff's Opposition to Defendant Michele Freeland's Motion to Dismiss, Docket Entry No. 14, at 11.