Jacqueline GILL

v.

Eric W. DEVLIN, et al.

Action No. 4:11–CV–623–Y.

United States District Court,
N.D. Texas,
Fort Worth Division.

March 12, 2012.

851

Kenneth D. Upton, Jr., Lambda Legal Defense & Education Fund, Benjamin David Williams, Gibson Dunn & Crutcher LLP, Dallas, TX, for Jacqueline Gill.

Jennifer Mackrell Covington, Law Snakard & Gambill, Angela H. Robinson, Tarrant County College District, Fort Worth, TX, for Eric W. Devlin, et al.

## ORDER DENYING MOTION TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADINGS

TERRY R. MEANS, District Judge.

Pending before the Court are Defendants' Motion to Dismiss (doc. 11), filed November 16, 2011, and Motion for Judgment on the Pleadings (doc. 18), filed January 6, 2012. After considering Plaintiff's Rule 7 reply, the motions, the responses, and the replies, the Court DENIES the motions.

### I. BACKGROUND [1]

On August 21, 2009, plaintiff Jacqueline Gill was hired as a full-time, temporary instructor of English for the Tarrant County College District ("TCCD"). During the interview process, Gill was told that instructors who successfully complete a contract teaching term and then apply for a permanent position are "uniformly hired." (Compl. 3 at ¶ 10.) Defendant Eric W. Devlin was the chair of the English Department, and defendant Antonio R. Howell was the Dean of Humanities. Devlin supervised Gill, and Howell supervised Devlin.

On October 28, Gill administered an exam in a composition course. A student stole the exam and tried to give copies of the exam to other students. Several students reported the theft to Gill who re-

[1] These facts are drawn from the complaint, Defendants' answer, and Plaintiff's Rule 7 reply.

ported it to Devlin. After the student withdrew from Gill's class, Gill was told that the matter was closed.

On November 9, Devlin met with Gill and told her that the student who had stolen the composition exam had complained that Gill flirted with female students in the class. Gill denied the accusation. Devlin told Gill that such behavior was not acceptable at TCCD and "responded with a lengthy diatribe about 'homosexuals' and how the Texas public views them. During the story, Devlin stated that Texas was a conservative state and the [TCCD] was a conservative institution. He concluded that, because of this, 'Texas and [TCCD] do not like homosexuals.'" (Compl. 4 at ¶ 17.) Nine days later, Devlin observed Gill teaching a class. When the class was over, he told Gill that he enjoyed the class and that Gill had done a good job.

In January 2010, Devlin told the temporary instructors that he was attempting to get their positions converted to permanent positions. Gill agreed to take on extra classes above her full-time load for the spring 2010 term. On January 27, Devlin sent an e-mail to the temporary instructors telling them that he needed to set up observation dates. (Compl. 5 at ¶ 21; Answer 6 at ¶ 21.) Gill learned that she had been the only instructor who had been observed during the fall 2009 term. Devlin observed Gill's class for a second time on April 5 and for a third time on April 19. Gill's "colleague" told Gill that "a third observation was highly unusual and something Devlin would normally do only if he was trying to gather information to get rid of someone." (Compl. 5–6 at ¶ 24.)

On May 12, Howell told Gill that her position and the six other temporary English instructor positions were ending, but that they would be re-designated adjunct faculty until permanent positions were available. Howell encouraged the seven instructors to re-apply for their positions when they became permanent positions. Gill applied for each of the seven positions when they became available. Devlin reviewed the applications and forwarded his approved applications to the hiring committee. From the forwarded applications, the hiring committee determined who would be interviewed. Gill was not allowed to interview for any of the permanent positions. Devlin's secretary confirmed to Gill that the other six instructors were allowed to interview and were hired for permanent positions. Apparently, Gill was allowed to remain at TCCD as an adjunct faculty member. (Compl. 7 at ¶¶ 32–33.) Gill alleges that her "first-rate" qualifications "met or exceeded that of those who were hired" and that she was similarly situated to the other six temporary instructors. (Compl. 6 at 127, 7 at ¶ 34, 10 at ¶ 46.)

On August 19, Gill met with Howell. Howell told Gill that "he never heard anything negative about Gill's work and that he wished Gill had been allowed to interview. Howell stated that he did not know why Gill had not been allowed to interview." (Compl. 6 at ¶ 30.) Gill told Howell about Devlin's 2009 statements about homosexuals. Howell told Gill that he would discuss the matter with Devlin, which he did, but he took no further action. (Compl. 7 at ¶ 30, 32; Rule 7 Reply 2.) Gill took her complaints to other administration members, but "the matter fell on deaf ears." (Compl. 7 at ¶ 31.) Although Gill taught a full course load during the fall 2010 term, she was assigned no classes for the spring 2011 term. "[A]lthough she never has been formally dismissed from her position as adjunct faculty[,] . . . [a]s a result of Devlin's and Howell's conduct, Gill has been [effectively] unemployed since the end of the spring 201[1] term." (Compl. 7 at ¶¶ 33–34.)

On September 7, Gill filed a declaratory-judgment complaint against Devlin and

Howell in their individual and official capacities arguing that they had violated her equal-protection rights by refusing to allow her to interview for a permanent position and by interfering with the hiring process.[2] (Compl. 10 at ¶ 48.) Devlin and Howell filed a motion to dismiss and a motion for judgment on the basis of the pleadings. In the motion to dismiss, Devlin and Howell assert that Gill has failed to state a claim upon which relief may be granted against them in their official capacities because she failed to allege a policy or practice of TCCD causing her injury. (Mot. to Dismiss 4–5.)[3] They further contend that Gill's claim for punitive damages against them in their individual capacities should be dismissed because Gill failed to allege facts demonstrating evil intent or reckless indifference to Gill's constitutional rights. (Mot. to Dismiss 12.) In their motion for judgment on the pleadings under Rule 12(c), they argue that they are entitled to qualified immunity.[4]

## II. STANDARD OF REVIEW

### A. RULE 12(B)(6) AND RULE 12(C)

Devlin and Howell filed their motion to dismiss under Rule 12(b)(6) after they filed an answer responding to Gill's allegations. Because a post-answer Rule 12(b)(6) motion is untimely, the Court must consider

Devlin and Howell's motion to dismiss to be one seeking dismissal on the basis of the pleadings under Rule 12(c). *See Mauro v. Freeland,* 735 F.Supp.2d 607, 614 n. 37 (S.D.Tex.2009); *Kinnison v. City of San Antonio,* No. SA–08–CA–421–XR, 2009 WL 578525, at *2 (W.D.Tex. Mar. 5, 2009); *Hobbs v. City of Dallas,* No. 3:06–CV–2106–K, 2007 WL 846519, at *1 (N.D.Tex. Mar. 20, 2007) (Kinkeade, Dist. J.). In deciding a Rule 12(c) motion, the Court only may consider allegations in the pleadings and incorporated exhibits, including a Rule 7 reply and the defendant's answer. *See* Fed.R.Civ.P. 7(a), 10(c); *Hoffman v. L & M Arts,* No. 3:10–CV–953–D, 2011 WL 3567419, at *9 (N.D.Tex. Aug. 15, 2011) (Fitzwater, C.J.) (considering attachment to answer in deciding Rule 12(c) motion); *Forgan v. Howard County,* No. 1:04–CV–233–C, 2005 WL 233808, at *6 (N.D.Tex. Feb. 1, 2005) (Cummings, Dist. J.) (considering Rule 7 reply and attached exhibits in determining Rule 12(c) motion on the basis of qualified immunity).[5]

The standard for dismissal on the pleadings under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6). *See Ackerson v. Bean Dredging, LLC,* 589 F.3d 196, 209 (5th Cir.2009). Federal Rule of Civil Pro-

2. Gill did not raise a due-process claim. (Pl. Resp. to Mot. to Dismiss 1 n. 2.)

3. Although Devlin and Howell raised qualified-immunity arguments in their motion to dismiss, the Court struck those arguments because they did not comply with the Court's scheduling order for the consideration of their qualified-immunity defense.

4. Although the Court gave Devlin and Howell that option to file a motion for summary judgment under Rule 56, they elected to file a Rule 12(c) motion for judgment on the pleadings.

5. Although there is case law stating a review under Rule 12(b)(6) only examines "the defen-

dant's conduct *as alleged in the complaint,"* this does not exclude reference to other Rule 7(a) pleadings in a Rule 12(c) review. *Behrens v. Pelletier,* 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (stating what may be considered in a qualified-immunity determination under Rule 12(b)(6)). This is simply a result of the fact that Rule 12(b) motions are filed before a responsive pleading; thus, the only pleading at the time of a Rule 12(b) motion would be the plaintiff's complaint. *See* Fed.R.Civ.P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.").

cedure 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted." This rule must, however, be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court. Rule 8(a) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–82, 129 S.Ct. 1937, 1949–51, 173 L.Ed.2d 868 (2009) (applying Rule 8(a) and plausibility standard to Rule 12(b)(6) motion raising qualified-immunity defense); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (holding Rule 8(a)'s simplified pleading standard applies to most civil actions). As a result, "[a] motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982). The Court must accept as true all well pleaded, nonconclusory allegations in the pleadings and liberally construe them in favor of the plaintiff. *See id.* The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid dismissal. *See Iqbal*, 129 S.Ct. at 1949–50; *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992). Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and his "factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The plaintiff must plead facts "plausibly showing" her right to relief on each claim asserted. *See Iqbal*, 129 S.Ct. at 1952. In other words, the plaintiff must "nudge[ ][her] claims across

the line from conceivable to plausible." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

## B. QUALIFIED IMMUNITY

■ To the extent Gill seeks money damages directly from Devlin and Howell for their actions taken under color of state law, they may invoke their right to qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009); *Hafer v. Melo*, 502 U.S. 21, 26, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *See Roe v. Tex. Dep't of Protective & Regulatory Servs.*, 299 F.3d 395, 400 (5th Cir.2002). Public officials performing discretionary functions enjoy immunity from suits for damages, provided their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved at the earliest possible stage in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

■ When this Court is called upon to confer qualified immunity upon a government official accused of violating a federal constitutional or statutory right, the Court initially must determine whether the plaintiff has actually alleged the violation of a federal constitutional or statutory right. *See Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). If the Court determines that she has, the Court must then decide whether, at the time of the alleged violation, that right was so clearly established that a reasonable government official in the defendant's situation would have understood that her conduct violated that right.[6] *See Brewer v.*

---

**6.** This part of the inquiry is often described as a question of objective reasonableness:

*Wilkinson*, 3 F.3d 816, 820 (5th Cir.1993). This second step requires the Court to identify the relevant clearly established law and then determine whether the defendant's actions were objectively reasonable in light of that law. *See Castillo*, 369 F.3d at 506. No prior case directly on point need be extant but, again, the official must have been able to understand that what she did violated a federal right. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Hassan v. Lubbock Indep. Sch. Dist.*, 55 F.3d 1075, 1079 (5th Cir.1995).

■ The burden is on the plaintiff to show the inapplicability of the qualified-immunity defense. *See McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). To discharge this burden, the plaintiff must allege facts that show that a defendant violated the plaintiff's constitutional rights and that the violation was objectively unreasonable in the light of clearly established law. *See Club Retro, LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir.2009); *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir.2005); *see also Anderson*, 483 U.S. at 639, 107 S.Ct. 3034.

■ The issue of qualified immunity is often resolved on summary judgment, but the Court may also consider the issue in a motion to dismiss. *See Iqbal*, 129 S.Ct. at 1949. Usually, qualified immunity is irrelevant to the existence of a plaintiff's cause of action because it is a defense available to the official in question. *See Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). But a motion to dismiss on the grounds of immunity asserts immunity from discovery, suit, and liability. *See Johnson v. Johnson*, 385 F.3d 503,

528 (5th Cir.2004). As stated above, the burden is on the plaintiff to disprove a defendant's qualified-immunity defense. *See Club Retro*, 568 F.3d at 194. Therefore, unless the pleadings plausibly state a claim of an objectively unreasonable violation of clearly-established law, a defendant pleading qualified immunity is entitled to dismissal before full discovery is commenced. *See Behrens v. Pelletier*, 516 U.S. 299, 306–08, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996); *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994–95 (5th Cir.1995).

## III. DISCUSSION

### A. Qualified Immunity—Individual-Capacity Claims

As discussed above, Devlin and Howell seek judgment on the basis of the pleadings because, they assert, Gill has failed to show the inapplicability of the qualified-immunity defense to her individual-capacity claims. Devlin and Howell's first argument is that sexual-orientation discrimination is not a clearly established violation of federal law. (Mot. for J. on Pleadings 9.)

First, the Court must determine whether Gill's allegations, if true, establish a constitutional violation. *See Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). Gill alleges an equal-protection violation by Devlin and Howell for failing to hire her for a permanent position on the basis of her sexual orientation. To properly raise such a claim, Gill must "allege facts which, if proved, demonstrate that '[s]he received treatment different from that received by similarly-situated individuals and that the unequal treatment stemmed from discriminatory

"Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action turns on the 'objective legal reasonableness' of the action … assessed in light of the legal rules that

were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *see also Castillo v. City of Weslaco*, 369 F.3d 504, 506 (5th Cir.2004) (per curiam).

intent.'" *Praylor v. Partridge,* No. 7:03–CV–247–BD, 2005 WL 1528690, at *3 (N.D.Tex. June 28, 2005) (quoting *Priester v. Lowndes County,* 354 F.3d 414, 424 (5th Cir.2004)) (Kaplan, Mag. J.). *See generally F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920) (discussing general requirements of Equal Protection Clause). A "[d]iscriminatory purpose in an equal[-]protection context implies that the decision-maker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *Woods v. Edwards,* 51 F.3d 577, 580 (5th Cir.1995) (quoting *United States v. Galloway,* 951 F.2d 64, 65 (5th Cir.1992)).

█ In her complaint, Gill alleged that Devlin and Howell violated her equal-protection rights by failing to forward her name to the hiring committee and, thus, failing to hire her as a permanent English instructor on the basis of her sexual orientation. She further alleged that she was treated differently than other temporary instructors who were hired at the same time she was but who were all later hired as permanent instructors. The hired instructors allegedly were as qualified or less qualified as Gill. Before the permanent positions were filled, Gill claims she received only positive feedback on her teaching and that Howell encouraged her to apply for the permanent positions. Gill alleges that the only negative information she was given about her teaching was when Gill was accused of flirting with female students. Although Devlin and Howell argue that they had a legitimate and nondiscriminatory reason for not hiring her as a permanent instructor, the Court may not consider this argument in a Rule 12(c) review. (Mot. to Dismiss 2.) After the accusation, Devlin allegedly began monitoring Gill's classes and told her that TCCD and Texas "do not like homosexuals." These facts, if assumed true, demonstrate discrimination against Gill on the basis of her sexual orientation, which can be a violation of the Equal Protection Clause. *See Johnson v. Johnson,* 385 F.3d 503, 530–31 (5th Cir.2004); *Pratt v. Indian River Cent. Sch. Dist.,* 803 F.Supp.2d 135, 152 (N.D.N.Y.2011); *Massey v. Banning Unified Sch. Dist.,* 256 F.Supp.2d 1090, 1094 (C.D.Cal.2003).

█ Having found that Gill sufficiently has alleged the violation of a constitutional right, the Court now examines whether that right was clearly established under relevant law. In 1996, the United States Supreme Court held that arbitrary discrimination on the basis of sexual orientation violates the Equal Protection Clause. *See Romer v. Evans,* 517 U.S. 620, 635, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) (holding state constitutional amendment prohibiting civil-rights protections for gays, lesbians, and bisexuals violated Equal Protection Clause). Seven years later, the Supreme Court concluded that an anti-sodomy statute violated the due-process rights of consenting, homosexual adults. *See Lawrence v. Texas,* 539 U.S. 558, 578, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003). After *Romer* and *Lawrence,* federal courts began to conclude that discrimination on the basis of sexual orientation that is not rationally related to a legitimate governmental interest violates the Equal Protection Clause. *See, e.g., Johnson,* 385 F.3d at 532; *Nabozny v. Podlesny,* 92 F.3d 446, 456 (7th Cir.1996); *Pratt,* 803 F.Supp.2d at 153 n. 12; *Massey,* 256 F.Supp.2d at 1095; *Park v. Trs. of Purdue Univ.,* No. 4:09–CV–087–JVB, 2011 WL 1361409, at *7 (N.D.Ind. Apr. 11, 2011); *Praylor,* 2005 WL 1528690, at *3; *cf. Milligan–Hitt v. Bd. of Trs. of Sheridan Cnty. Sch. Dist. No. 2,* 523 F.3d 1219, 1233–34 (10th Cir.2008) (holding unconstitutionality of sexual-orientation discrimination not clearly established before *Lawrence* in

June 2003). The Court concludes that in 2009, when Devlin and Howell are alleged to have failed to hire Gill as a permanent instructor because of her sexual orientation, the unconstitutionality of sexual-orientation discrimination lacking a rational relationship to a legitimate governmental aim was clearly established.[7] Further, if the Court assumes, as it must, that Devlin and Howell comported themselves as alleged, then it must conclude that a reasonable person in their position would have understood that his conduct constituted sexual-orientation discrimination in violation of the Equal Protection Clause of the Constitution. *See Johnson*, 385 F.3d at 532 ("[A] state violates the Equal Protection Clause if it disadvantages homosexuals for reasons lacking any rational relationship to legitimate governmental aims."). *See generally* 2 L. Camille Hebert, Employee Privacy Law § 9:5 (2011); Todd A. DeMitchess et al., *Sexual Orientation and the Public School Teacher*, 19 B.U. Pub. Int. L.J. 65, 82–97 (2009). Accordingly, Gill's pleading is sufficient to survive Devlin and Howell's motion asserting qualified immunity against Gill's equal-protection claims.

## B. PUNITIVE DAMAGES—INDIVIDUAL-CAPACITY CLAIM

 Devlin and Howell argue that Gill's claim for punitive damages against them in their individual capacities fails because "the facts alleged by [Gill] do not demonstrate that the alleged conduct was motivated by 'evil' intent, or demonstrates 'reckless or callous indifference' to [Gill's] constitutional rights." (Mot. to Dismiss 12.) A plaintiff raising § 1983 claims may recover punitive damages against an official in his personal capacity if the official

acted with malicious or evil intent or callous disregard of the plaintiff's federally protected rights. *See Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). The facts as alleged by Gill in her complaint, if assumed true, plausibly allege actions that were malicious or taken in callous disregard of Gill's equal-protection rights. *See, e.g., Williams v. Kaufman Cnty.*, 352 F.3d 994, 1015–16 (5th Cir. 2003).

## C. SECTION 1983—OFFICIAL-CAPACITY CLAIM

Devlin and Howell also seek dismissal of Gill's equal-protection claims brought against them in their official capacities. Specifically, they assert that Gill has failed to allege (1) a policy or widespread practice, (2) that Devlin or Howell were policymakers with final authority, or (3) that Devlin's remarks resulted in any injury to Gill. (Mot. to Dismiss 5–7.)

 Gill's § 1983 claims against Devlin and Howell essentially constitute claims against TCCD. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Therefore, Gill must allege facts that would be sufficient to support a claim against TCCD. A § 1983 against TCCD must allege that Gill's injuries occurred "under color of any statute, ordinance, regulation, custom, or usage" of TCCD. 42 U.S.C. § 1983. Because respondeat-superior liability is nonexistent in § 1983 actions, Gill must plausibly allege that (1) TCCD had a policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation was the moving force behind the policy or custom. *See*

---

7. The Court is not concluding that there is no legitimate governmental purpose in Gill's treatment by Devlin and Howell and certainly is not concluding that there actually was discrimination based on any prohibited basis. The Court simply concludes that Gill's pleadings plausibly state a claim for the violation of a clearly established constitutional right.

*World Wide St. Preachers Fellowship v. Town of Columbia,* 591 F.3d 747, 752–53 (5th Cir.2009). An official policy is either (1) "[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority" or (2) a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir.1984) (en banc, per curiam op. on reh'g).

▉▉▉ Gill does not raise a statute, ordinance, or regulation, but alleges that TCCD "adopted or furthered a practice of rejecting otherwise qualified applicants for employment based on a belief that lesbian and gay persons should not be allowed to teach at [TCCD] because of their sexual orientation." (Compl. 9–10 at ¶ 45.) In asserting such a pattern of conduct by TCCD, Gill must allege that the governing body of TCCD or an official to whom TCCD delegated policymaking authority had actual or constructive knowledge of such a custom. *See id.* Constructive knowledge "may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." *Id.*

The governing body of TCCD is its Board of Trustees. *See* Tex. Educ.Code Ann. § 130.002 (West 2002). Gill "alleges that [TCCD] has a specific, unconstitutional position that discriminates against lesbian and gay people—a custom directly referenced by Devlin and called to the attention of Howell." (Resp. to Mot. to Dis-

miss 7.) She additionally argues that further discovery could "sufficiently support a conclusion that the practice is persistent and widespread ..., but the allegation is adequately specific and adequately identified by a current employee as [TCCD's] position to overcome [Devlin and Howell's] motion to dismiss." (Resp. to Mot. to Dismiss 8.)

▉▉▉ Gill alleges that Devlin was the ultimate decisionmaker regarding which applications were forwarded to the hiring committee. (Compl. 6 at ¶ 28.) If Devlin, as the ultimate decisionmaker, routinely excluded applications from homosexual applicants (which Gill implies by asserting that she has not been hired for any of the 32 positions at TCCD she applied for since she first was not hired for a permanent position) and if Howell and other TCCD administrators failed to appropriately address Gill's complaints because of the alleged animus, these allegations along with Devlin's isolated comment about TCCD not "liking homosexuals" suffices under Rule 12(b)(6) to plausibly allege a persistent and widespread custom of not hiring homosexual applicants that TCCD would or should have been aware of. (Compl. 7 at ¶ 30–34.) *See, e.g., Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 356 (6th Cir.1998) (holding isolated comment by senior official "evidencing managerial policy" coupled with discriminatory comments by individuals in high positions might "reflect a cumulative managerial attitude among the employer's managers that has influenced the decisionmaking process for a considerable time"). The Court recognizes that a municipal policy ordinarily cannot be inferred from a single comment or constitutional violation. *See Piotrowski v. City of Houston,* 237 F.3d 567, 581 (5th Cir.2001). However, the Court's current review is limited to whether Gill has **plausibly alleged** a custom or

policy in her pleadings implicating § 1983 liability. By barely nudging her claims from conceivable to plausible, Gill has done so. Of course, this is not a conclusion that Gill has established the presence of a genuine dispute as to any material fact regarding her official-capacity claims.

## IV. CONCLUSION

Gill has plausibly alleged the violation of her clearly established equal-protection rights. Thus, Devlin and Howell are not entitled to qualified immunity on the basis of the pleadings raising claims against Devlin and Howell in their individual capacities. Gill's equal-protection claims against Devlin and Howell in their official capacities also survive a Rule 12(b)(6) challenge. Gill has plausibly alleged a custom or policy that TCCD would or should have been aware of. Once again, this is not a finding that neither Devlin nor Howell will not be entitled to summary judgment or judgment as a matter of law at a later date. It is simply a conclusion that, based solely on the pleadings, Gill has brought plausible equal-protection claims.