# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-10874

United States Court of Appeals
Fifth Circuit

**FILED**

May 11, 2018

Lyle W. Cayce
Clerk

THEOPHILUS K. UDEIGWE,

      Plaintiff - Appellant

v.

TEXAS TECH UNIVERSITY; DOCTOR DAVID WEINDORF; DOCTOR
ERIC HEQUET; MICHAEL GALYEAN,

      Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:16-CV-232

Before HIGGINBOTHAM, SMITH, and CLEMENT, Circuit Judges.

PER CURIAM:*

Plaintiff-Appellant Theophilus Udeigwe appeals the district court's order dismissing his claims under Title VII of the Civil Rights Act pursuant to Federal Rule of Civil Procedure 54(b) and its subsequent grant of defendant-appellees' motion to dismiss his remaining constitutional and state law claims.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-10874

For the reasons stated below, we AFFIRM in part and DISMISS THE APPEAL in part.

**I**

In 2012, Udeigwe, a black male professor, was offered a tenure-track faculty position at Texas Tech University ("TTU") in the Department of Plant and Soil Science. The position was subject to a six-year tenure probationary period. Udeigwe alleges that, despite his academic achievements, he was informed in early 2015 by defendant Dr. Eric Hequet that he was "disliked" by other faculty members. According to Udeigwe, the faculty members Hequet identified—including defendant Associate Dean David Weindorf—were all responsible for Udeigwe's mid-tenure evaluation. Udeigwe's evaluation was apparently unfavorable, and he submitted a written rebuttal to his colleagues' assessment of his performance. On March 18, 2015, he was informed by the dean of his department, defendant Michael Galyean, that he would not be reappointed to his position. The non-reappointment officially became effective on May 31, 2015, but Udeigwe was granted a "terminal appointment"[1] for the 2015-2016 academic year.

TTU's Operating Policy and Procedure ("OP") 32.01 instructs departments to have procedures for conducting a third-year review for untenured faculty members. An appeal of a decision not to recommend tenure on the basis of fairness or impropriety should be addressed to the Tenure Advisory Committee. OP 32.02 contains guidelines for non-reappointment appeals. Udeigwe challenged the non-reappointment decision as contrary to TTU standards or procedures. The Tenure Hearing Panel concluded that "the process was generally consistent with prior third year reviews," and affirmed

---

[1] Universities often offer junior faculty members who are not reappointed a "terminal" contract to teach for one additional year before discharge. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 252–53 (1980).

2

No. 17-10874

Udeigwe's non-reappointment in late April 2016. TTU's Interim President approved the panel's decision roughly one week later.

On May 23, 2016, more than 300 days after being notified of his non-reappointment, Udeigwe filed a charge against TTU, Galyan, Hequet, and Weindorf with the Equal Employment Opportunity Commission ("EEOC"), alleging that he had been subjected to discrimination, harassment, and retaliation on the basis of race. The EEOC provided him with a right-to-sue letter, and Udeigwe filed a *pro se* complaint in the district court against TTU. TTU filed a motion to dismiss, and, after he retained counsel, Udeigwe was granted leave for an extension of time to file an updated pleading. Udeigwe's first amended complaint added professors Weindorf, Hequet, and Galyean as defendants. Defendants filed a partial motion to dismiss, and Udeigwe filed a second amended complaint.[2] The complaint alleged that defendants: 1) violated Title VII and the Texas Labor Code; 2) violated 42 U.S.C. §§ 1981 and 1983; 3) deprived Udeigwe of his due process rights under the federal and Texas constitution[3]; and 4) committed tortious interference with his employment contract.

On May 25, 2017, the district court granted defendants' third motion to dismiss, and entered judgment pursuant to Rule 54(b). In relevant part, the Rule 54(b) judgment dismissed Udeigwe's Title VII claims as time-barred.[4] After the district court denied Udeigwe's motion to refile his improperly-filed third amended complaint for failing to comply with the court's limited

---

[2] Udeigwe's second amended complaint is the relevant pleading for the purposes of this appeal.

[3] As the district court noted, Udeigwe improperly pleaded his constitutional claims separately from the alleged violations of §§ 1981 and 1983 as independent, free-standing causes of action rather than through the appropriate statutes.

[4] The district court also rejected his Title VII claims on the merits.

3

No. 17-10874

instructions for repleading,[5] it treated Udeigwe's remaining claims as abandoned and dismissed them with prejudice. Judgment was entered on July 11, 2017. Udeigwe filed his notice of appeal on August 4, 2017.

## II

This court reviews the district court's grant of a motion to dismiss under Rules 12(b)(1) and 12(b)(6) *de novo*. *Quinn v. Guerrero*, 863 F.3d 353, 363 (5th Cir. 2017). Under Rule 12(b)(1), the plaintiff bears the burden of demonstrating that jurisdiction exists. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Where a "court lacks the statutory or constitutional power to adjudicate the case[,]" dismissal for lack of subject matter jurisdiction is appropriate. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotations omitted).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A complaint will not "suffice if it tenders naked assertions devoid of fuller factual enhancement." *Id.* (internal quotations omitted). The court accepts all well-pleaded facts as true and must consider those facts in the light most favorable to the plaintiff. *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007).

## III

Udeigwe's notice of appeal was filed seventy-one days after the Rule 54(b) final judgment dismissing his Title VII claims based on his non-reappointment was entered. Accordingly, his appeal of his Title VII claims is

---

[5] The district court noted that Udeigwe "brazenly ignored" and "deliberately chose not to comply with the Court's instructions," which were explicitly limited to repleading, with factual sufficiency, his constitutional claims through the appropriate statutes and repleading his tortious interference claims against Weindorf, Hequet, and Galyean in their individual capacity.

untimely and must be dismissed for lack of jurisdiction. *See Bowles v. Russell*, 551 U.S. 205, 209 (2007) ("[T]he taking of an appeal within the prescribed time is 'mandatory and jurisdictional.'" (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 61 (1982))); *see also Annamalai v. Comm'r of Internal Revenue*, 884 F.3d 530, 532 (5th Cir. 2018).

Rule 54(b) allows a district court to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties" if the court "expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). "A proper Rule 54(b) judgment is a final judgment for all purposes on the adjudicated claims." *Meadaa v. K.A.P. Enters., L.L.C.*, 756 F.3d 875, 879 (5th Cir. 2014) (internal quotation omitted). Rule 54(b) judgments must be appealed within 30 days, and the time for appeal begins to run when final judgment has been entered. *See* Fed. R. App. P. 4(a)(1)(A); *Smith v. Mine Safe Appliance Co.*, 691 F.2d 724, 725 (5th Cir. 1982). Since Udeigwe's appeal was filed more than 30 days after the district court entered judgment, we dismiss his appeal of the Rule 54(b) order disposing of his Title VII claims for lack of jurisdiction.[6]

## IV

Udeigwe claims that one or more of the individual defendants, in their official capacities, deprived him of his rights under the due process clause of

---

[6] We note also that the district court correctly concluded that Udeigwe's Title VII claims were time-barred. Udeigwe had 300 days from the alleged discriminatory action—the non-reappointment decision—to present his claim to the EEOC. 42 U.S.C. § 2000e-5(e)(1); *see also Ricks*, 449 U.S. at 257–58. A claim not presented within 300 days is time-barred. *See Washington v. Patlis*, 868 F.2d 172, 175 (5th Cir. 1989). Udeigwe did not file his EEOC grievance until over a year after TTU informed him that he would not be reappointed. Moreover, TTU's decision to uphold the non-reappointment decision following Udeigwe's appeal is not a separate, cognizable adverse employment action. *See Ricks*, 449 U.S. at 261–62; *see also Thompson v. City of Waco*, 764 F.3d 500, 505 (5th Cir. 2014). Accordingly, any Title VII disparate treatment or retaliation claim based on the denial of the appeal must fail. Lastly, Udeigwe named only Weindorf and Hequet in his Title VII claim for unlawful harassment. Individual employees cannot be sued under Title VII in either their individual or official capacities. *See Smith v. Amedisys, Inc.*, 298 F.3d 434, 448–49 (5th Cir. 2002).

the Fourteenth Amendment. He maintains, however, that he is not alleging that the denial of tenure and non-renewal of his employment contract form the basis of his claim. Instead, Udeigwe contends that defendants deprived him of his right to defend himself from false allegations, to be afforded a reasonable opportunity to be heard, and to have unbiased decisionmakers in his hearing process. To the extent that the pleadings and the briefing are unclear, the panel understands Udeigwe to be alleging violations of his right to procedural due process.

At the outset, we note that Udeigwe has improperly raised his constitutional grievances in a standalone claim under the Fourteenth Amendment. His claim must be brought under § 1983, which provides the private cause of action against state actors for constitutional violations. *See, e.g.*, *Jordan v. Fisher*, 823 F.3d 805, 810 (5th Cir. 2016). Moreover, "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 344 (5th Cir. 2006) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 566–67 (1972)).

As the Supreme Court has explained, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents*, 408 U.S. at 577. Generally, without concrete evidence establishing a reasonable expectation of the benefit, there is no "property right in continued employment or an assurance of tenure" under Texas law. *See Spuler v. Pickar*, 958 F.2d 103, 107 (5th Cir. 1992). Furthermore, "[e]stablishment of a formal tenure process generally precludes a reasonable expectation of continued employment for non-tenured faculty." *Id.* (internal quotations omitted). It is undisputed that Udeigwe was non-tenured and that his employment was subject to a six-year

tenure probationary period. He does not allege that TTU ever guaranteed him a tenured position. Accordingly, Udeigwe did not have a property interest protectable by procedural due process requirements.

Similarly, Udeigwe has not demonstrated that he was deprived of a cognizable liberty interest. The Supreme Court has recognized that, in very limited circumstances, a state's decision not to rehire an individual would be subject to procedural due process constraints. *See Bd. of Regents*, 408 U.S. at 573. Specifically, "[w]here a person's good name, reputation, honor, or integrity is at stake . . . notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). If, however, the state "did not make any charge against him that might seriously damage his standing and associations in his community," such as "that he had been guilty of dishonesty, or immorality," it is not a violation of his due process rights if they decline to rehire him without affording him procedure. *Bd. of Regents*, 408 U.S. at 573. Defendants have made no such charge against Udeigwe.

Notably, Udeigwe was afforded the opportunity to rebut his negative evaluation and appeal the non-reappointment decision. He was afforded more process than he was entitled to. The district court properly dismissed Udeigwe's Fourteenth Amendment Claim.

## V

Udeigwe next alleges that defendants deprived him of his "equal right to work and/or" committed "retaliation due to protected speech because of his race" in violation of 42 U.S.C. §§ 1981 and 1983. As a threshold matter, we note that § 1983 is the exclusive remedy[7] for alleged violations of § 1981 by state actors—§ 1981 does not create an independent cause of action. *See Felton v.*

---

[7] Section 1983 merely creates a cause of action through which individuals can vindicate their rights guaranteed by the constitution. A "violation of § 1983" cannot be asserted as a freestanding claim.

No. 17-10874

*Polles*, 315 F.3d 470, 482 (5th Cir. 2002), *abrogated on other grounds* by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Udeigwe's pleadings do not make clear that he is properly pursuing his § 1981 claim through § 1983, though he attempts to cure this deficiency in his brief on appeal. Regardless, Udeigwe does not—and cannot—identify the constitutional source of his "equal right to work." Nor does he specify the protected speech he claims to have engaged in or assert that he spoke out on a "matter of legitimate public concern." *Connick v. Myers*, 461 U.S. 138, 145 (1983) (internal quotation omitted); *see also Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 415–16 (1979). Thus, to the extent Udeigwe is basing his cause of action on an alleged violation of the First Amendment, he fails to state a claim for relief. *See id.* at 146–47.[8]

## VI

Udeigwe also claims that Weindorf, Hequet, and Galyean tortiously interfered with his employment contract in violation of Texas state law.[9] To state a claim for tortious interference, Udeigwe must establish: "(1) the existence of a contract subject to interference, (2) the occurrence of an act of interference that was willful and intentional, (3) the act was a proximate cause of the plaintiff's damage, and (4) actual damage or loss occurred." *Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex. 1995). "The second element of this cause of action is of particular importance when the defendant serves the dual roles of the corporate agent and the third party who allegedly induces the corporation's breach." *Id.* at 796. Because a party cannot tortiously interfere with its own contract, Udeigwe "must show that the defendant[s] acted in a

---

[8] Because we reject Udeigwe's nebulous constitutional claims on their merits, we need not resolve whether the individual defendants are entitled to qualified immunity.

[9] We assume this claim is brought against defendants in their individual capacities, as they cannot be held liable for tortious interference in their official capacities. *See Holloway v. Skinner*, 898 S.W.2d 793, 796 (Tex. 1995).

fashion so contrary to the corporation's best interests that [their] actions could only have been motivated by personal interests." *Id.* Mixed motives will not suffice. *See ACS Inv'rs, Inc. v. McLaughlin*, 943 S.W.2d 426, 432 (Tex. 1997). Moreover, if TTU fails to complain about the individual defendants' actions, they have not acted contrary to TTU's interests. *See Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 457 (Tex. 1998).

Udeigwe does not allege facts sufficient to demonstrate that the individual defendants were solely motivated by personal interests with respect to their actions surrounding Udeigwe's non-reappointment. Indeed, there is no indication that any of them would "personally benefit from his absence" at all. *Newman v. Kock*, 274 S.W.3d 697, 703 (Tex. Ct. App. 2008). Moreover, TTU has never indicated that it disapproved of the individual's evaluations of Udeigwe or the non-reappointment decison; to the contrary, TTU explicitly approved of both. Accordingly, the district court properly dismissed Udeigwe's tortious interference allegations for failure to state a claim.

## VII

Lastly, Udeigwe claims that the district court abused its discretion in denying him leave to refile his third amended complaint. Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave" to a party to amend its pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). Whether to allow a party to amend its complaint, however, "is left to the sound discretion of the district court and will only be reversed on appeal when that discretion has been abused." *U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). When the court cites valid reasons for denying leave, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed [or] undue prejudice to the opposing party by virtue of allowance of the

No. 17-10874

amendment" it does not abuse its discretion. *Id*. (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The district court allowed Udeigwe to cure deficiencies in his original pleading by filing both a first and a second amended complaint. Udeigwe was represented by counsel when filing both amended documents. After dismissing his Title VII claims in the Rule 54(b) judgment, the district court gave Udeigwe yet another chance to replead with sufficient factual sufficiency his constitutional claims through the appropriate statute and to replead his tortious interference claims against defendants in their individual capacities.

In denying Udeigwe's motion to refile his third amended complaint, the court noted that, rather than follow the court's clear instructions, Udeigwe reasserted multiple claims that had already been dismissed in its Rule 54(b) motion as time-barred or meritless. Moreover, the district court was clear that Udeigwe had permission to amend only as to his constitutional and tortious interference claims. The district court stated that Udeigwe "brazenly ignored the Court's instructions . . . regarding the extent of his leave to amend, and the complaint should therefore not be accepted." Given the circumstances and Udeigwe's persistent noncompliance, the district court did not abuse its discretion in denying Udeigwe leave to refile his third amended complaint.

## VIII

For the foregoing reasons, we AFFIRM in part and DISMISS THE APPEAL in part.

10