# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 1, 2021

Lyle W. Cayce
Clerk

No. 20-20578

Medical Doctor Nabil T. Khoury,

*Plaintiff—Appellant*,

*versus*

Medical Doctor Archana Thota; Does 1 through 10, inclusive; Roes 11 through 20, inclusive; Apollo Healthcare at Willowbrook, L.L.C.; Willowbrook Med Properties, L.L.C.,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-4806

Before Higginbotham, Willett, and Duncan, *Circuit Judges*.
Per Curiam:[*]

In this securities fraud case, Dr. Nabil Khoury appeals the dismissal of his complaint under Rule 12(b)(6) and the Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4. He also appeals the district court's

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

denial of leave to amend his complaint. We conclude that the district court correctly determined that (1) Khoury failed to satisfy the requirements for pleading securities fraud, and (2) Khoury's request for leave to amend did not demonstrate how he would cure the defects in his complaint. Accordingly, we AFFIRM.

I

In September 2014, Dr. Nabil Khoury attended a presentation by Dr. Arcana Thota. Thota sought investors for her "premier" nursing facility that offered "resort-like" care for patients. Thota offered Khoury an opportunity to invest in a nursing home, Apollo, and Willowbrook Med Properties (Willowbrook). For each $10,000 he invested in Apollo, Khoury would obtain a 1% share of Apollo. For each $34,000 he invested in Willowbrook, Khoury would obtain a 1% share of Willowbrook. After Thota assured Khoury that the investment was "low risk" and that "[Thota] had already opened and operated multiple other successful nursing homes on a similar model," Khoury decided to invest. In October 2014, Khoury signed operating agreements for each of the properties and gave Thota two payments: $50,000 for a 5% share of Apollo, and $68,000 for a 2% share of Willowbrook.

A few weeks after his initial investment, and upon Thota's request, Khoury signed a personal guaranty for Apollo's bank loan. The following year, in December 2016, Khoury and other investors signed a loan modification agreement for Apollo with the bank. In January 2019, Thota demanded that Khoury invest an additional $50,000 as part of a "cash call" to pay taxes for Apollo. Thota informed Khoury that his failure to make the additional investment would dilute his ownership interest in Apollo while maintaining the same liability to the bank for his personal guaranty.

At this point, Khoury realized that something was amiss with his investment. While he paid the $50,000 that Thota demanded, he later

requested that she return that amount. Thota refused and stated that she had raised $1,000,000 from Apollo's investors as part of the cash call. Khoury later learned that Thota had only raised $665,000 and decided to investigate Thota and the investment properties. Through conversations with doctors, administrators, and employees of Apollo, Khoury discovered that he had invested in a property where patients lacked proper care, bills were often unpaid, and Medicare regulations were flouted.

Khoury attempted to contact Thota and the bank that held his personal guaranty. Thota "effectively disappeared" for months after the cash call but resurfaced after Khoury continued to hound the bank to obtain information about the guaranty. Khoury met with Thota in May 2019 to voice his concerns and asked for a copy of the operating agreements and financial records for the properties. Thota told Khoury to stop contacting the bank, refused to provide Khoury with verification of his ownership in Apollo and Willowbrook, and threatened to default on the loan if he called the bank again.

In December 2019, Khoury sued Thota, Apollo Healthcare at Willowbrook, LLC, Willowbrook Med Properties, LLC, and various unknown defendants (collectively "Defendants"). He alleged violations of § 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5, plus various state law claims. Khoury requested a declaratory judgment that he has a 5% and 2% ownership interest in Apollo and Willowbrook, respectively. He also sought damages and injunctive relief.

The Defendants moved to dismiss his securities fraud claims under Rule 12(b)(6) for failure to state a claim and his state law claims for improper pleading, untimeliness, or a lack of standing. The Defendants also sought to dismiss his claim for declaratory judgment based on abstention.

Khoury's securities fraud claims were based on four allegations of false representations: (1) Thota's representation at the investment

No. 20-20578

presentation in September 2014 that the investment properties were "low risk" and "premier" facilities; (2) Thota's successful efforts in October 2014 to convince Khoury to sign a personal guaranty for the Apollo's bank loan; (3) Thota's successful efforts in December 2016 to convince Khoury and other investors to sign a loan modification agreement for the bank loan; and (4) Thota's January 2019 representation that the cash call had raised $1,000,000 rather than $665,000. In addition, Khoury added an additional allegation in his Opposition to the Motion to Dismiss: that in January 2015, Thota failed to provide Khoury with the promised security.

The district court dismissed the 2014 allegations as barred by the five-year statute of limitations. 28 U.S.C. § 1658(b)(2). The court dismissed the 2016 and 2019 allegations for failure to satisfy the pleading standard of Rule 9(b) and the PSLRA. The court noted that the 2015 allegation was not raised in the complaint and that it also failed to satisfy the pleading standard. The court dismissed the declaratory judgment as unripe. Finally, the district court dismissed the state law claims since it had disposed of the claims over which it had original jurisdiction. All of these claims were dismissed without prejudice.[1]

In dismissing the securities fraud claims, the district court took "judicial notice of a state court proceeding . . . against the defendants by other purported investors in [Apollo and Willowbrook]." *Khoury v. Thota*, No. 4:19-CV-4806, 2020 WL 6494986, at *5 (S.D. Tex. Oct. 1, 2020) (footnote omitted). The district court stated that "the state court proceeding may reveal additional facts relevant to [Khoury's] federal securities fraud

---

[1] The district court dismissed with prejudice Khoury's claims for exemplary damages, attorney fees, and pre- and post-judgment interest, to the extent that he pleaded them as independent causes of action rather than as remedies.

No. 20-20578

claims," so it was "in the interests of justice to dismiss these claims without prejudice." *Id.*

Khoury appealed the dismissal of his securities fraud claims and argued that the district court erred in not granting him leave to amend his complaint because some of his allegations now risk being time-barred if he were to refile as the district court permitted him to do.

II

Before considering an appeal's merits, we must confirm that we have jurisdiction. *Casteneda v. Falcon*, 166 F.3d 799, 801 (5th Cir. 1999). Even where the parties have not raised a question of jurisdiction, we must raise it sua sponte if there is doubt. *Id.* Here, the jurisdictional question is whether the district court's order was a final and appealable order. The district court's resolution of the case is arguably ambiguous. While the district court dismissed all of Khoury's claims, it did so without prejudice and without entering a final judgment. Further, the district court noted that its dismissal without prejudice was motivated by a similar state court proceeding involving these defendants that "may reveal additional facts relevant to [Khoury's] federal securities fraud claims." *Khoury*, No. 4:19-CV-4806, 2020 WL 6494986, at *5.

A dismissal without prejudice is appealable where "denial of relief and dismissal of the case end [the] suit so far as the [d]istrict [c]ourt [is] concerned." *United States v. Wallace & Tiernan Co.*, 336 U.S. 793, 794 n.1 (1949). We recently applied this principle to a Rule 12(b)(6) dismissal. *Umbrella Inv. Grp., LLC v. Wolters Kluwer Fin. Servs., Inc.*, 972 F.3d 710, 712 (5th Cir. 2020) (per curiam). There, we noted that "a judgment dismissing all claims is a judgment dismissing an action," which is final and appealable. *Id.* While the district court in that case had entered a separate judgment dismissing the plaintiff's claims, *id.*, Rule 4 of the Federal Rules of Appellate

Procedure notes that "[a] failure to set forth a judgment or order on a separate document when required by Federal Rule of Civil Procedure 58(a) does not affect the validity of an appeal from that judgment or order." FED. R. APP. P. 4(a)(7)(B). Thus, the absence of a final judgment from the district court does not transform an otherwise appealable order into a non-appealable one. *Moreno v. LG Elecs., USA Inc.*, 800 F.3d 692, 696–97 (5th Cir. 2015).

Here, the district court dismissed all of Khoury's claims. The district court did not give Khoury leave to amend his complaint or offer an indication that it expected additional filings in this case. *Cf. Farber v. La. State Bd. of Med. Exam'rs*, 265 F. App'x 152, 153 (5th Cir. 2008) (per curiam) (unpublished) (holding that the court lacked appellate jurisdiction where the district court dismissed the complaint but gave the plaintiff leave to amend and a deadline to file the amended complaint). Further, to the extent that the district court's order "looks both ways" regarding finality, we must read the order as final and appealable to avoid creating "traps for the unwary in ambiguous cases." *Umbrella Inv. Grp.*, 972 F.3d at 712 (internal quotation omitted). In addition, since Khoury's complaint contains allegations that would risk being barred by the statute of limitations if he were to refile his suit, the dismissal without prejudice may effectively operate as a final disposition of those claims. *See Boazman v. Econ. Lab'y, Inc.*, 537 F.2d 210, 213 (5th Cir. 1976). Thus, by dismissing all of Khoury's claims, the district court demonstrated that this suit had ended so far as it was concerned. Because the district court's order is appealable, we have jurisdiction.

No. 20-20578

III

On appeal, Khoury presents two issues: (1) whether the district court erred in dismissing his complaint under Rule 12(b)(6), and (2) whether the district court erred in denying him leave to amend. We review a Rule 12(b)(6) dismissal de novo and view the facts in the light most favorable to the plaintiff. *Retana v. Twitter, Inc.*, 1 F.4th 378, 380 (5th Cir. 2021). We review the denial of leave to amend for abuse of discretion. *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 312 (5th Cir. 2002).

A

The district court dismissed Khoury's securities fraud claims based on misrepresentations from 2014 as time barred. A plaintiff must file a claim for securities fraud within five years of the violation. 28 U.S.C. § 1658(b)(2). The five-year statute of limitations acts as an "unqualified bar" to actions that are filed untimely and "giv[es] defendants total repose after five years." *Merck & Co. v. Reynolds*, 559 U.S. 633, 650 (2010). Khoury's complaint alleges misrepresentations in September and October 2014. He did not file his complaint until December 2019, after the five-year period had expired. Thus, the district court correctly dismissed his claims based on those 2014 misrepresentations.

The district court dismissed the remainder of Khoury's securities fraud claims due to insufficient pleading. To state a claim of federal securities fraud under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, "a plaintiff must allege, in connection with the purchase or sale of securities, (1) a misstatement or an omission (2) of material fact (3) made with scienter (4) on which plaintiff relied (5) that proximately caused [the plaintiff's] injury." *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 348 (5th Cir. 2002) (internal quotation omitted). Because the heightened pleading standard of Rule 9(b) applies to these fraud claims, a plaintiff must also

7

No. 20-20578

"specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent" to survive a motion to dismiss. *Id.* at 350 (quoting *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 412 (5th Cir. 2001)).

His claims based on representations from 2016 and 2019 were properly dismissed.[2] Khoury states that, in 2016, Thota "convinced [him] and other investors to sign a loan modification agreement with the bank." Khoury does not point to any statement regarding this event that was misleading or specify the contents of that statement. His allegation regarding the loan modification agreement therefore fails to satisfy the heightened pleading statement for securities fraud. *See Tchuruk*, 291 F.3d at 349–50. His allegation regarding Thota's 2019 cash call is similarly deficient. Khoury's complaint does not specify any misrepresentation made by Thota prior to his contribution of additional money. While he states that Thota initially told him that she had raised $1,000,000 from the cash call but later learned that she had "only raised $665,000," this representation took place after he had paid her the requested amount. A statement made after the plaintiff has already invested is not one on which the plaintiff relied when deciding to invest. His allegation regarding the cash call thus does not satisfy the requirements of § 10(b) and Rule 10b-5. *See id.* at 348 (noting that a plaintiff must allege that the misrepresentation was one "on which plaintiff relied").

In his opposition to the Defendants' motion to dismiss, Khoury introduced an additional allegation regarding an event in January 2015 where Thota failed to provide the operating agreements for the purchased securities. Since the job of the district court on a motion to dismiss is to

---

[2] Like the district court did below, we assume without deciding that these allegations were made in connection with the purchase or sale of a security and fall under § 10(b) and Rule 10b-5. *Khoury*, No. 4:19-CV-4806, 2020 WL 6494986, at *4 n.7.

No. 20-20578

"assess[] the legal sufficiency of the *complaint*," matters not presented in the complaint cannot save it if it is otherwise insufficient. *See Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012) (emphasis added).

Thus, the district court correctly dismissed Khoury's securities fraud allegations under Rule 12(b)(6).

B

Khoury contends that the insufficiencies in his complaint would have been rectified if the district court had granted leave to amend. He claims that the district court's failure to do so constitutes abuse of discretion because his claims now risk being time-barred. This argument is unavailing.

Khoury failed to amend his complaint as of right and failed to properly request leave to amend from the district court. Under Rule 15(a), a party can amend its pleading within "21 days after service of a motion under Rule 12(b)." Thus, upon receiving the Defendants' Motion to Dismiss, Khoury had the opportunity to cure the defects in his complaint that the Defendants raised. Instead, he chose to stand on his complaint and argued that it already satisfied the pleading requirements.

After the expiration of the 21-day period, Khoury could "amend [his] pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). While a "court should freely give leave when justice so requires," a party must first ask the district court for leave to amend. *Id.*; *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) ("A party who neglects to ask the district court for leave to amend cannot expect to receive such a dispensation from the court of appeals."). To make a sufficient request for leave to amend, Khoury did not need to make a formal motion, but "bare request[s] in an opposition to a motion to dismiss—without any indication of the particular

9

No. 20-20578

grounds on which the amendment is sought—do[] not constitute a motion within the contemplation of Rule 15(a)." *Willard*, 336 F.3d at 387 (quotation and internal citation omitted).

Khoury's requests to the district court for leave to amend were limited to several perfunctory statements in his opposition to the Defendants' Motion to Dismiss.[3] These statements at times suggested that he sought leave to amend and at other points indicated that he would request leave to amend at a later point. *Compare* Plaintiff's Opposition to Motion to Dismiss at 11 ("To the extent the Court wishes further specifics, leave to amend should be given."), *with id.* at 12 ("Plaintiff will seek leave to amend this Complaint regardless of the outcome of this Motion . . . ."). These mixed signals could have led the district court to believe that Khoury would formally seek leave to amend if the Defendants' motion was granted. To the extent that Khoury's statements were clear enough to indicate that he requested

---

[3] Five different requests in Khoury's Opposition to the Motion to Dismiss could be construed as attempts to seek leave to amend. First, when discussing the factual basis for his belief that Thota's 2014 statements constituted fraud, he concluded by stating that he had "more than met the applicable standard under Rules 8 and 9, and the PSLRA" but that "leave to amend should be given" if the district court wanted "further specifics." Plaintiff's Opposition to Motion to Dismiss at 11. Second, when discussing the 2019 cash call, Khoury noted that "[t]o the extent further facts need to be pled on this front, they can be—and Plaintiff should be given a chance to do so." Plaintiff's Opposition to Motion to Dismiss at 12. Third, in response to the Defendants' claim that Khoury needed to include additional parties for his declaratory relief, he stated that he "will seek leave to amend this Complaint regardless of the outcome of this Motion. . . . Leave to amend to do so should be granted." Plaintiff's Opposition to Motion to Dismiss at 12. Fourth, his discussion of his request for injunctive relief included a comment that he would explain his failure to seek a TRO "in an amended pleading if necessary." Plaintiff's Opposition to Motion to Dismiss at 13. Fifth, Khoury concluded his Opposition by stating that he "asks that this Motion be denied, or that he be given leave to amend." Plaintiff's Opposition to Motion to Dismiss at 14. He also included a request for leave to amend for his Opposition itself, noting that he "will seek leave of Court to supplement [his Opposition] as necessary to ensure that all argument [sic] are fulsomely presented." Plaintiff's Opposition to Motion to Dismiss at 1.

leave, they failed to specify how he would amend his complaint to address its defects. Khoury stated that he can provide "further specifics," but he does not explain how those specifics would cure the problems in the complaint.[4] Without addressing the insufficiencies in his complaint, granting Khoury leave to amend would be futile.

Given the unclear nature of his statements in his Opposition and the lack of specificity of his request for leave to amend, the district court did not abuse its discretion by failing to give Khoury leave to amend his complaint. *See Goldstein v. MCI WorldCom*, 340 F.3d 238, 255 (5th Cir. 2003) (holding that the district court did not abuse its discretion where "the plaintiffs did not demonstrate to the court how they would . . . cure the pleading defects raised by the defendants").

IV

The district court did not err in dismissing Khoury's complaint and denying leave to amend. We therefore AFFIRM the judgment of the district court.

---

[4] The sole request that indicated how Khoury would amend the complaint related to his claim for declaratory relief, which the district court dismissed as unripe. Khoury does not challenge the dismissal of that claim on appeal. Further, the request to amend that claim does not address the ripeness issue and thus would not cure the defect with that claim.